1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

United States of America,

9                                              No. CV-22-01744-PHX-JJT

10                        Plaintiff,          **CONSENT DECREE OF**
                                              **PERMANENT INJUNCTION**
11          vs.

12

Global Vitality, Incorporated, *et al.*,

13                        Defendants.

14

15

16              **CONSENT DECREE OF PERMANENT INJUNCTION**

17          Plaintiff, the United States of America, by its undersigned counsel, having filed a

18   Complaint (Doc. 1) and Motion to Enter Consent Decree (Doc. 2) for Permanent Injunction

19   against Global Vitality, Inc., dba Enzyme Process International, a corporation, and Steven

20   D. Roderick and Gorica Blagojevic, individuals (collectively, "Defendants"), and

21   Defendants having appeared and consented to entry of this Decree without contest and

22   before any testimony has been taken, and the United States of America having consented

23   to this Decree (*See* Doc. 2-1 at 17-18);

24          **IT IS HEREBY ORDERED** granting the United States' Motion to Enter Consent

25   Decree (Doc. 2).

26          **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** as follows:

27          1.      This Court has jurisdiction over the subject matter and all parties to this

28   action.

2. The Complaint states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "Act").

3. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of food (dietary supplements), as defined by 21 U.S.C. § 321(ff), that are:

A. Adulterated within the meaning of 21 U.S.C. § 342(g)(1) in that they have been prepared, packed, or held in violation of current good manufacturing practice regulations for dietary supplements ("Dietary Supplement CGMP"), set forth in 21 C.F.R. Part 111; and

B. Misbranded within the meaning of 21 U.S.C. § 343 because their labels, among other things, fail to list each ingredient; list the correct serving size and number of servings per container; and/or identify the part of the plant from which each botanical dietary ingredient in the product is derived.

4. Defendants violate 21 U.S.C. § 331(k) by causing articles of food (dietary supplements) that they hold for sale after shipment in interstate commerce to become adulterated and misbranded within the meaning of 21 U.S.C. §§ 342(g)(1) and 343.

5. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of drug, as defined by 21 U.S.C. § 321(g)(1), that are misbranded within the meaning of 21 U.S.C. § 352(f)(1) because their labeling fails to bear adequate directions for use.

6. Defendants violate 21 U.S.C. § 331(k) by causing articles of drug that they hold for sale after shipment in interstate commerce to become misbranded within the meaning of 21 U.S.C. § 352(f)(1).

7. Defendants violate 21 U.S.C. § 331(d) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(a) nor exempt from approval.

- 2 -

8.      Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons or entities in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise, are hereby subject to the following requirements:

A.      Within ten (10) business days of the entry of this Decree, Defendants shall retain, at Defendants' expense, an independent person (the "CGMP Expert") who is without any personal or financial ties (other than a retention agreement) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to inspect Defendants' facility located at 470 N. 56th Street, Chandler, Arizona, or at any other location(s) at which Defendants now or in the future directly or indirectly receive, manufacture, prepare, pack, repack, label, hold, or distribute any articles of food (including but not limited to dietary supplements and their components) and/or articles of drug ("Defendants' Facility," "the Facility," or "Facilities"), to determine whether the methods, processes, and controls are operated and administered in conformity with Dietary Supplement CGMP (21 C.F.R. Part 111). Defendants shall notify FDA in writing of the identity and qualifications of the CGMP Expert within three (3) business days of retaining such expert;

B.      Within twenty (20) business days of the entry of this Decree, the CGMP Expert shall perform a comprehensive inspection of the Facility and the methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements and, within thirty (30) business of entry of this Decree, certifies in writing to FDA that: (1) he or she has inspected the Facility, methods, processes, and controls; (2) all Dietary Supplement CGMP deviations that have been brought to Defendants' attention by FDA, the CGMP Expert, and any other source have been corrected; and (3) the Facility and the methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements, are, in the CGMP Expert's opinion, in compliance with this Decree, the Act, and its implementing

regulations. The CGMP Expert's report of the inspection, which shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, within thirty (30) business of entry of this Decree, shall include, but not be limited to, a determination that Defendants have created and implemented a system of methods, processes, and controls to ensure that they, at a minimum:

(1)     Establish component specifications that are necessary to ensure the purity, strength, and composition of dietary supplements manufactured using the components, as required by 21 C.F.R. § 111.70(b)(2);

(2)     Ensure that all specifications necessary to support the quality of each finished dietary supplement are met, as required by 21 C.F.R. §§ 111.105(h) and 111.70(a);

(3)     Conduct at least one appropriate test or examination to verify the identity of each dietary ingredient, prior to its use, as required by 21 C.F.R. § 111.75(a)(1)(i);

(4)     Establish finished product specifications for each dietary supplement manufactured for the identity, purity, strength, and composition of the finished batch of dietary supplements, as required by 21 C.F.R. § 111.70(e);

(5)     Ensure that the tests and examinations used to determine whether the specifications are met are appropriate and scientifically valid methods, as required in 21 C.F.R. § 111.75(h)(1);

(6)     Maintain and clean equipment, utensils, and all food-contact surfaces, as required by 21 C.F.R. § 111.27; and

(7)     Implement and follow hygienic practices during operations, as required by 21 C.F.R. § 111.10(b).

C.     Within ten (10) business days of the entry of this Decree, Defendants shall retain, at Defendants' expense, an independent person (the "Labeling Expert") who is without any personal or financial ties (other than a retention agreement) to Defendants and/or their families, except that this person may be the same as the CGMP Expert

described in paragraph 8(A), and who, by reason of background, training, education, or experience, is qualified to review Defendants' dietary supplement labeling (including but not limited to labels, catalogs, and websites) and other promotional/informational material to determine whether: (1) the labeling complies with 21 U.S.C. § 343 and applicable regulations; and (2) Defendants' claims cause any dietary supplement (or purported dietary supplement) that they receive, manufacture, prepare, pack, repack, label, hold, or distribute to be a drug within the meaning of 21 U.S.C. § 321(g)(1). Defendants shall notify FDA in writing of the identity and qualifications of the Labeling Expert within three (3) business days of retaining such expert;

D.     Within twenty (20) business days of entry of this Decree, the Labeling Expert shall conduct an inspection of Defendants' Facility and comprehensive review of Defendants' dietary supplement labeling (including but not limited to labels, catalogs, social media pages, and websites) and other promotional/informational material and, within thirty (30) business days of entry of this Decree, certifies in writing to FDA that: (1) he or she has reviewed Defendants' dietary supplement labeling and other promotional/informational material; (2) all labeling violations brought to Defendants' attention by FDA, the Labeling Expert, and any other source, have been corrected; and (3) Defendants' dietary supplement labeling and claims are, in the Labeling Expert's opinion, in compliance with this Decree, the Act, and its implementing regulations. The Labeling Expert's written certification shall include the specific results of his or her inspection and review, including references to product names and copies of all materials reviewed and specific recommendations to achieve compliance. The Labeling Expert shall prepare a detailed report of this review, which shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, within thirty (30) business days of entry of this Decree, that shall include, but not be limited to, a determination that:

(1)     Defendants have implemented procedures that are adequate to ensure that their dietary supplement labeling complies with 21 U.S.C. § 343 and applicable regulations; and

- 5 -

(2)      Defendants have implemented procedures that are adequate to ensure that their claims do not cause any dietary supplement (or purported dietary supplement) that they receive, manufacture, prepare, pack, repack, label, hold, or distribute to be a drug within the meaning of 21 U.S.C. § 321(g)(1), unless and until the product is the subject of an approved new drug application or abbreviated new drug application, 21 U.S.C. §§ 355(a), (b), (j), or is otherwise exempt from approval under the Act;

E.      Within forty (40) business days of the entry of this Decree, Defendants report to FDA in writing the actions they have taken to:

(1)      Correct the Dietary Supplement CGMP and labeling deviations brought to Defendants' attention by FDA, the CGMP Expert, Labeling Expert, and any other source;

(2)      Ensure that the Defendants' Facility, methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements are and will be continuously operated in conformity with Dietary Supplement CGMP;

(3)      Ensure that Defendants' dietary supplement labeling complies with 21 U.S.C. § 343 and applicable regulations; and

(4)      Ensure that Defendants' claims do not cause any food or dietary supplement (or purported dietary supplement) that they receive, manufacture, prepare, pack, repack, label, hold, or distribute to be a drug within the meaning of 21 U.S.C. § 321(g)(1) unless the product is the subject of an approved new drug application or abbreviated new drug application, 21 U.S.C. §§ 355(a), (b), and (j), or is otherwise exempt from approval under the Act;

F.      As and when FDA deems necessary, FDA representatives inspect Defendants' Facility, including the buildings, equipment, products, labeling, and all relevant records contained therein, to determine whether the requirements of this Decree have been met and whether Defendants are operating in conformity with the Act, its implementing regulations, and this Decree;

G.     Defendants shall pay all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews with respect to paragraph 8, at the rates set forth in paragraph 15; and

H.     FDA shall notify Defendants in writing that they appear to be in compliance with the requirements set forth in paragraphs 8(A)-(E) and (G) of this Decree. In no circumstance shall FDA's silence be construed as a substitute for written notification.

9.     Within sixty (60) calendar days after entry of this Decree, Defendants shall retain, at Defendants' expense, a) an independent person (the "CGMP Auditor") who shall meet the criteria for and may be the same person as the CGMP Expert described in paragraph 8(A), and b) an independent person (the "Labeling Auditor") who shall meet the criteria for and may be the same person as the Labeling Expert in paragraph 8(C), and may be the same person as the CGMP Auditor described in this paragraph (collectively, the "CGMP and Labeling Auditor(s)"), to conduct audit inspections of the Facility and the methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements, and of Defendants' dietary supplement labeling (including but not limited to labels, catalogs, social media pages, and websites) and other promotional/informational material. Thereafter:

A.     The CGMP and Labeling Auditor(s) shall conduct audit inspections no less frequently than once annually for a period of no less than five (5) years and then at least once every year thereafter. The first audit shall occur not more than six (6) months after Defendants have received FDA's written notification pursuant to paragraph 8(H).

B.     At the conclusion of each audit inspection, the CGMP and Labeling Auditor(s) shall prepare a detailed written audit report ("Audit Report") analyzing whether Defendants are in compliance with this Decree, the Act, and its implementing regulations and identifying any deviations from such requirements ("Audit Report Observations"). As a part of every Audit Report (except the first one), the CGMP and Labeling Auditor(s) shall assess the adequacy of actions taken by Defendants to correct all previous Audit Report Observations. The Audit Reports shall be delivered contemporaneously to Defendants and

1   FDA by courier service or overnight delivery service, no later than five (5) business days
2   after the audit inspection is completed. In addition, Defendants shall maintain the Audit
3   Reports in separate files at Defendants' Facility and shall promptly make the Audit Reports
4   available to FDA upon request.

5          C.      If an Audit Report contains any Audit Report Observations,
6   Defendants shall, within ten (10) business days after receipt of the Audit Report, correct
7   those observations, unless FDA notifies Defendants that a shorter time period is necessary.
8   If, after receiving the Audit Report, Defendants believe that correction of the Audit Report
9   Observations will take longer than ten (10) business days, Defendants shall, within five (5)
10  business days after receipt of the Audit Report, submit to FDA in writing a proposed
11  schedule for completing corrections ("Audit Correction Schedule"). The Audit Correction
12  Schedule must be approved by FDA in writing prior to implementation by Defendants. In
13  no circumstance shall FDA's silence be construed as a substitute for written approval.
14  Defendants shall complete all corrections according to the approved Audit Correction
15  Schedule. Within twenty (20) business days after Defendants' receipt of an Audit Report,
16  unless FDA notifies Defendants that a shorter time period is necessary, or within the time
17  period provided in an FDA-approved Audit Correction Schedule, the CGMP and Labeling
18  Auditor(s) shall review the actions taken by Defendants to correct the Audit Report
19  Observations. Within five (5) business days after beginning that review, the CGMP and
20  Labeling Auditor(s) shall report in writing to FDA, delivered contemporaneously to
21  Defendants and FDA by courier service or overnight delivery service, whether each of the
22  Audit Report Observations has been corrected and, if not, which Audit Report
23  Observations remain uncorrected.

24         10.     Upon entry of this Decree, and after receiving FDA's written notification
25  pursuant to paragraph 8(H), Defendants are permanently restrained and enjoined under
26  21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any of the
27  following acts:

28

A.      Violating 21 U.S.C. § 331(a), by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of food (including but not limited to dietary supplements and their components) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) or misbranded within the meaning of 21 U.S.C. § 343;

B.      Violating 21 U.S.C. § 331(k), by causing articles of food (including but not limited to dietary supplements and their components) that Defendants hold for sale after shipment in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) or misbranded within the meaning of 21 U.S.C. § 343;

C.      Violating 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of drug that are misbranded within the meaning of 21 U.S.C. § 352(f)(1);

D.      Violating 21 U.S.C. § 331(k) by causing articles of drug that Defendants hold for sale after shipment in interstate commerce to become misbranded within the meaning of 21 U.S.C. § 352(f)(1);

E.      Violating 21 U.S.C. § 331(d) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(a) nor otherwise exempt from approval under the Act; and

F.      Failing to implement and continuously maintain the requirements of this Decree.

11.    If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, the analysis of a sample, a report, or data prepared or submitted by Defendants, the CGMP Expert, Labeling Expert, CGMP and Labeling Auditor(s), or any other information, that Defendants have failed to comply with any provision of this Decree, Defendants have violated the Act or its implementing regulations, or additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, but subject to Paragraph 12 below,

notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A. Cease receiving, manufacturing, preparing, packing, repacking, labeling, holding, or distributing any and all products;

B. Recall, at Defendants' expense, any product that in FDA's judgment is adulterated, misbranded, or otherwise in violation of this Decree, the Act, or its implementing regulations;

C. Revise, modify, expand, or continue to submit any reports, plans, procedures, or other records prepared pursuant to this Decree;

D. Submit additional reports or information to FDA as requested;

E. Institute or reimplement any of the requirements set forth in this Decree;

F. Issue a safety alert; and/or

G. Take any other corrective actions as FDA, in its discretion, deems necessary to protect the public health or bring Defendants into compliance with this Decree, the Act, or its implementing regulations.

12. The following process and procedures apply when FDA issues an order under paragraph 11 except as provided in subparagraph D. below:

A. Unless a different timeframe is specified by FDA in its order, within ten (10) business days after receiving an order under paragraph 11, Defendants shall notify FDA in writing either that: (i) Defendants are undertaking or have undertaken corrective action, in which event Defendants also shall describe the specific actions taken or to be taken and the proposed schedule for completing the actions; or (ii) Defendants do not agree with FDA's order. If Defendants notify FDA that they do not agree with FDA's order, Defendants shall explain in detail and in writing the basis for their disagreement; in doing so, Defendants also may propose specific alternative actions and specific timeframes for achieving FDA's objectives.

B.     If Defendants notify FDA that they do not agree with FDA's order, FDA will review Defendants' notification and thereafter, in writing, affirm, modify, or withdraw its order, as FDA deems appropriate. If FDA affirms or modifies its order, it will explain the basis for its decision in writing. This written notification shall constitute final agency action.

C.     If FDA affirms or modifies its order, Defendants shall, upon receipt of FDA's order, immediately implement the order (as modified, if applicable). Defendants shall continue to diligently implement FDA's order while the matter is before the Court and unless and until the Court reverses, stays, or modifies FDA's order. Any review of FDA's decision under this paragraph shall be made in accordance with the terms set forth in paragraph 23.

D.     The process and procedures set forth in paragraphs 12.A.-C. shall not apply to any order issued under paragraph 11 if such order states that, in FDA's judgment, the matter raises significant public health concerns. In such case, Defendants shall immediately and fully comply with the terms of that order. Should Defendants seek to challenge any such order, they may petition this Court for relief. Any cessation of operations under this Paragraph 12(D) shall continue until Defendants receive written notice from FDA that Defendants appear to be in compliance with the Act, its implementing regulations, and this Decree.

13.     The costs of recalls and other corrective actions, including the costs of FDA's inspections, investigations, supervision, analyses, examinations, sampling, testing, reviews, document preparation, travel, and subsistence expenses to implement and monitor the remedies set forth in paragraph 11 shall be borne by Defendants at the rates specified in paragraph 16.

14.     Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect Defendants' operations and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree, the Act, and all applicable regulations. During such inspections, FDA

representatives shall be permitted to: have immediate access to Defendants' places of business including, but not limited to all Facilities, buildings, equipment, raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other material therein; take photographs and make video recordings; take samples of Defendants' raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other material; and examine and copy all records relating to the receipt, manufacture, preparing, packing, repacking, labeling, holding, and distribution of any and all of Defendants' products and their components. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

15.     Defendants shall promptly provide any information or records to FDA upon request regarding the receipt, manufacture, preparing, packing, repacking, labeling, holding, and distribution of Defendants' products. Within fifteen (15) business days after FDA's request for Defendants' product labels; labeling; leaflets; websites or social media pages owned, created by, controlled by, or related to Defendants (including, but not limited to, http://enzymeprocess.co/, and any future website(s) or social media page(s) owned by, created by, controlled by, or related to Defendants); promotional materials; and any other media over which Defendants have control, Defendants shall submit a copy of the requested materials (in electronic format unless otherwise specified) to FDA at the address specified in Paragraph 24.

16.     Defendants shall pay all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with any part of this Decree at the standard rates prevailing at the time the costs are incurred. As of the date that this Decree is signed by the parties, these rates are: $105.46 per hour or fraction thereof per representative for inspection and investigative work; $126.24 per hour or fraction thereof per representative for analytical or review work; $0.59 per mile for travel expenses by automobile; government rate or the

equivalent for travel by air or other means; and the published government per diem rate for subsistence expenses where necessary. In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court. Defendants shall make payment in full to FDA within thirty (30) business days of receiving written notification from FDA of the costs.

17.     Within five (5) business days after entry of this Decree, Defendants shall post a copy of this Decree in a conspicuous location in a common area at Defendants' Facility, and at any other location at which Defendants conduct business, and shall ensure that the Decree remains posted for as long as the Decree remains in effect. Within ten (10) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph.

18.     Within ten (10) business days after entry of this Decree, Defendants shall hold a general meeting or series of smaller meetings for all employees, at which they shall describe the terms and obligations of this Decree. Within fifteen (15) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph and a copy of the agenda, list of attendees, and meeting minutes from the meeting(s) held pursuant to this paragraph.

19.     Within ten (10) business days after entry of this Decree, Defendants shall provide a copy of the Decree by personal service or certified mail (return receipt requested) to each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons or entities in active concert or participation with any of them ("Associated Persons"). Within twenty (20) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who

have received a copy of this Decree, and attaching a copy of the executed certified mail return receipts.

20.    In the event that any of the Defendants becomes associated with any additional Associated Person(s) at any time after entry of this Decree, Defendants shall immediately provide a copy of this Decree, by personal service or certified mail (return receipt requested) to such Associated Person(s). Within five (5) business days of each time that any of the Defendants becomes associated with any additional Associated Person, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts.

21.    Defendants shall notify FDA in writing at least ten (10) business days before any change in ownership, name, or character of their business that occurs after entry of this Decree, including an incorporation, reorganization, creation of a subsidiary, relocation, dissolution, bankruptcy, assignment, sale, or any other change in the structure or identity of Global Vitality, Inc., dba Enzyme Process International, or the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect obligations arising out of this Decree. Defendants shall provide a copy of this Decree to any prospective successor or assign at least twenty (20) business days prior to any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) business days prior to such assignment or change in ownership.

22.    Should the United States bring and prevail in a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), expert witness fees, travel expenses incurred by attorneys and witnesses, investigational and analytical expenses, administrative and court costs, and any other costs or fees relating to such contempt proceedings.

- 14 -

23.     Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

24.     All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be prominently marked "Decree Correspondence" and addressed to the Program Division Director, Office of Human and Animal Food Operations West 4 (HAFW-4), Denver District Office, U.S. Food and Drug Administration, 6th Avenue and Kipling Street, P.O. Box 25087, Building 20-DFC, Denver, Colorado 80225-0087, and via email at orahafwest4firmresponses@fda.hhs.gov, and shall reference this civil action by case name and civil action number.

25.     If Defendants (i) after receiving written notice from FDA, as described in Paragraph 8(H), (ii) petition the Court for relief from this Decree and, (iii) at the time of the petition, in FDA's judgment, Defendants have maintained a state of continuous compliance with the Act, its implementing regulations, and this Decree for the sixty (60) months preceding the petition, Plaintiff will not oppose such petition.

26.     This Court retains jurisdiction over this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to close this matter.

Dated this 26th day of October, 2022.

_____
Honorable John J. Tuchi
United States District Judge

- 15 -